Filed 8/27/20  P. v. Rodriguez CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSEPH ARTHUR RODRIGUEZ,<br><br>    Defendant and Appellant. | B299824<br><br>(Los Angeles County<br>Super. Ct. No. BA127363)<br><br>ORDER MODIFYING OPINION (NO CHANGE IN JUDGMENT) |

THE COURT:

The opinion in the above-entitled matter filed on August 26, 2020, is modified as follows:

On page 8, the following sentences and citation are deleted:

"At the subsequent hearing, the court would act as the trier of fact to determine whether the prosecution has 'prove[d], beyond a reasonable doubt, that the petitioner is ineligible for resentencing.'  (§ 1170.95, subd. (d)(3).)  At that point, the trial court would need to resolve any conflicts in the evidence and draw inferences in a way we cannot do at this

stage.  Nothing in this opinion is intended to suggest to the trial court how it should draw those inferences."

This modification does not constitute a change in the judgment.

_____

  ROTHSCHILD, P. J.        BENDIX, J.        SINANIAN, J.*

_____

  * Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 8/26/20  P. v. Rodriguez CA2/1 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSEPH ARTHUR RODRIGUEZ,<br><br>    Defendant and Appellant. | B299824<br><br>(Los Angeles County<br>Super. Ct. No. BA127363) |

APPEAL from an order of the Superior Court of Los Angeles County, George G. Lomeli, Judge.  Reversed.

———————————————

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kristen J. Inberg and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

The trial court summarily denied defendant and appellant Joseph Arthur Rodriguez's petition for resentencing under Penal Code[1] section 1170.95 on his murder conviction on the grounds that the statute violates the California constitution and that, in any case, Rodriguez was the actual killer and therefore ineligible for resentencing under the statute. Rodriguez contends that the trial court erred with respect to both of its conclusions. The Attorney General agrees, as do we. The law is not unconstitutional, and the record of conviction does not show as a matter of law that Rodriguez was the actual killer. We therefore reverse.[2]

## FACTS AND PROCEEDINGS BELOW

In a prior opinion in which we affirmed Rodriguez's conviction on direct appeal (*People v. Rodriguez* (June 11, 1998, B115514) [nonpub. opn.] (*Rodriguez*)), we described the facts of his case:

"The murder victim (Paz) and her live-in male friend (Aguilar) went to a bar to drink and play pool. The two ended up in a disagreement over whether to leave and Paz walked off alone down the median strip of the road. Aguilar did not think much of her departure, as she had done this before and would typically call later to have Aguilar pick her up.

_____

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

[2] On October 16, 2019, Rodriguez filed a petition for a writ of habeas corpus, which we ordered to be considered concurrently with this appeal. (*In re Joseph Arthur Rodriguez*, case No. B301503.) Rodriguez's petition for writ of habeas corpus is denied by separate order filed concurrently herewith.

"As Paz walked down the median strip, three assailants accosted her.  A witness heard a gunshot, a woman scream, and another gunshot.  He looked out the window to see three males running from the scene.  They stopped, briefly huddled, then ran off.  The witness identified defendant as one of the three.  Police found Paz dead, shot in the face.  Her watch was found nearby.  Abrasions on her arm indicated the watch had been forcibly removed." (*Rodriguez, supra*, B115514, pp. 2–3.)

The witness who heard the shooting recognized Rodriguez as one of the people he had seen fleeing from the scene.  Police officers brought Rodriguez to the station and interviewed him there.  At first, he said that he had heard about the shooting but denied that he was present or had any involvement in it.  A detective then told him that a witness had seen him fleeing from the scene of the crime.  Rodriguez admitted he was involved and made the following written statement:

"I was with my homeboys.  I didn't know their names and we were walking on Huntington Drive.  And we saw this lady walking alone on the strip in the street.  The two guys I [was] with said they wanted to see if the lady had any money to jack.  So we walked up to her.  I stood away near the sidewalk.  Then I heard a shot and saw the lady fall down.  So the homeboys started to run.  So I ran too, down the street and up Esmeralda.  That's all I know.  That's all I did."

The police officers then allowed one of Rodriguez's friends, named Peter, to go into the interview room to speak with Rodriguez alone.  The conversation was not recorded, but police officers used an electronic device to listen in.  Two detectives gave similar accounts of the conversation.  According to one officer, Peter walked into the room and immediately asked, "Hey dog, did

you kill that lady?" Rodriguez responded, "Yeah." Peter asked, "With the twenty-two?"[3] Rodriguez replied, "Yeah." Peter then said, "I almost bought that twenty-two." Rodriguez asked Peter how much time he could get if convicted of murder, and Peter replied, "Probably until you're twenty-five." Rodriguez then said something to the effect of, "Fuck it, they don't have anything on me, just that I was seen running."

After Peter left the interview room, the police officer who had previously been interviewing Rodriguez re-entered. He told Rodriguez that he had been listening in on Rodriguez's conversation with Peter, and asked if Rodriguez wished to revise his statement. Rodriguez said yes and dictated a new statement to the officer:

"About 8:30 or nine o'clock in the night when I was with one or two of my homeboys, one of them pulled out a small black gun. I held it. Found that it was a .22 caliber semiautomatic. I gave it . . . back to my homeboy and he shot it two times in the air. Then he put it back into his pocket.

"It was later on when he came walking down Topaz towards Huntington Drive when we saw the lady. The homeboys went up to rob her and she started to scream. And they shot her. I started to run with them. I thought that they were only going to rob her. I got scared when they shot her.

"When I met up with them later, I asked them why they shot her. They told me he panicked."

---

[3] The murder weapon was not recovered, but forensic analysis revealed that the victim was killed with a .22-caliber handgun.

A jury convicted Rodriguez of one count of murder (§ 187, subd. (a)), and one count of attempted robbery (§§ 211, 664).[4] The jury found true an allegation that a principal was armed during the commission of the crimes (§ 12022, subd. (a)(1)), but found not true an allegation that Rodriguez personally used a firearm.  The trial court sentenced Rodriguez to 30 years to life in prison.

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which, among other changes, limits the circumstances in which a defendant may be guilty of murder for participating in a felony in which a victim was killed.  Under section 189, subdivision (e), as amended by Senate Bill No. 1437, a defendant is guilty of felony murder only if he actually killed the victim; directly aided and abetted or solicited the killing, or otherwise acted with the intent to kill; or "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3).)  The legislation also enacted section 1170.95, which establishes a procedure for vacating murder convictions for defendants who would no longer be guilty of murder under the new law and resentencing those who were so convicted. (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)

Rodriguez filed a petition for resentencing on January 7, 2019.  The trial court summarily denied the petition on two grounds.  First, the court found that Senate Bill No. 1437 was unconstitutional because it impermissibly amended two

---

[4] Rodriguez was also convicted of two counts of assault with a deadly weapon (§ 245, subd. (a)(1)) and one count of attempted robbery (§§ 211, 664) on the basis of his conduct in a separate incident.  Those convictions are not at issue in this appeal.

initiatives (see Cal. Const., art. II, § 10, subd. (c)), it violated the victims' right to finality in criminal cases (see Cal. Const., art. I, § 28, subd. (a), par. (6)) and the People's right to due process (see Cal. Const., art I, § 29), and it violated the separation of powers doctrine. In addition, the court found that, even if section 1170.95 was constitutional, Rodriguez was still ineligible for resentencing because he actually killed the victim.

## DISCUSSION

### A.  *Procedures Under Section 1170.95*

The trial court considers a petition for resentencing under section 1170.95 according to a three-step process. First, the court "review[s] the petition and determine[s] if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).)

If the petition survives this first stage of review, the court must appoint counsel if the petitioner has so requested. (§ 1170.95, subd. (c).) The prosecutor then files a response, and the petitioner may file a reply. "If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

If the court issues an order to show cause, it must hold a hearing within 60 days to determine whether to vacate the murder conviction. (§ 1170.95, subd. (d)(1).) At this third and final stage of the proceeding, the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

## B. *The Trial Court Erred by Summarily Denying the Petition*

The trial court denied Rodriguez's petition at the first stage of review, without appointing the attorney or requesting briefing from the parties, on the ground that Rodriguez was the "actual killer" (§ 189, subd. (e)(1)) in the murder of Paz. A denial at that stage is appropriate only if the trial court can determine from the record of conviction that "the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner." *(People v. Verdugo* (2020) 44 Cal.App.5th 320, 329, review granted Mar. 18, 2020, S260493 (*Verdugo*); accord, *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1140, fn. 10, review granted Mar. 18, 2020, S260598.)

In this case, the record of conviction contains conflicting evidence regarding Rodriguez's involvement in the killing. Officers testified that Rodriguez told a friend that he had personally killed the victim, but when confronted, he claimed he did not do so. This conflict in the evidence, coupled with the jury's failure to find that Rodriguez used a firearm in the offense, precludes finding as a matter of law that Rodriguez was the actual killer. (See *Pope v. County of Riverside* (1963) 219 Cal.App.2d 649, 651 ["To establish a fact as a matter of law the state of the evidence must be such that no other conclusion is legally deducible therefrom"].) Nor are we aware of anything in the record that establishes conclusively that Rodriguez is ineligible because he "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3).)

Because the record does not show as a matter of law that Rodriguez's petition fails, the trial court erred by denying the

petition at the first stage. The trial court must appoint counsel, request briefing, and proceed to the next step of review. (See § 1170.95, subd. (c); *Verdugo*, *supra*, 44 Cal.App.5th at pp. 328–329, review granted Mar. 18, 2020, S260493.) If at that point the court determines that Rodriguez has made "a prima facie showing that he . . . is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).) At the subsequent hearing, the court would act as the trier of fact to determine whether the prosecution has "prove[d], beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) At that point, the trial court would need to resolve any conflicts in the evidence and draw inferences in a way we cannot do at this stage. Nothing in this opinion is intended to suggest to the trial court how it should draw those inferences.

### C. *Senate Bill No. 1437 is Constitutional*

The trial court found that Senate Bill No. 1437 violates the California Constitution because it impermissibly amended two voter initiatives (see Cal. Const., art. II, § 10, subd. (c)), because it violates the rights of crime victims to finality of judgment (see Cal. Const., art. I, § 28, subd. (a), par. (6), § 29), and because it violates the separation of powers by requiring courts to reopen final judgments and by usurping the Governor's pardon and commutation power. We agree with the reasoning of the court in *People v. Lamoureux* (2019) 42 Cal.App.5th 241, which considered these same arguments and rejected them. (*Id.* at pp. 250–266; see also *People v. Solis* (2020) 46 Cal.App.5th 762, 775–784; *People v. Cruz* (2020) 46 Cal.App.5th 740, 748–761; *People v. Prado* (2020) 49 Cal.App.5th 480, 484–492; *People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270, 280–289.)

## DISPOSITION

The trial court's order is reversed, and the trial court is ordered to appoint counsel to represent Rodriguez and continue to the second stage of review under section 1170.95, subdivision (c).

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:


BENDIX, J.


SINANIAN, J.*

---

*\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.*